UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | ) ) ) | CASE NO. 5: 05 CV 820 |
| Appellant, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| ELEANOR TAYLOR, | ) ) | MEMORANDUM OPINION AND ORDER |
| Appellee. | ) | |

This matter comes before the Court upon an appeal from a November 17, 2004 Order of the United States Bankruptcy Court for the Northern District of Ohio. (ECF #1.) Before the Bankruptcy Court, Chapter 7 debtor Eleanor Taylor ("Appellee") sought discharge of student loan debt in the amount of $16,215.08 plus interest. The Pennsylvania Higher Education Assistance Agency ("Appellant"), which guaranteed the loans, opposed discharge. The Bankruptcy Court ultimately determined that Appellee's student loan debt should be discharged pursuant to 11 U.S.C. § 523(a)(8) because repayment of the loans would constitute an undue hardship.

On appeal, Appellant asserts that Appellee's financial situation is not so exceptional as to entitle her to discharge of the student loans. For the reasons that follow, the decision of the Bankruptcy Court is AFFIRMED.

I.

On April 15, 2003, Appellee filed a voluntary Chapter 7 petition. Excluding the amount owed on the student loan debt, Appellee listed over $18,000.00 in unsecured debt. On August

25, 2003, Appellee initiated an adversary proceeding seeking to obtain a discharge of her student loan obligation on the ground of undue hardship.

The Bankruptcy Court held a trial on the requested discharge on October 18, 2004. After receiving evidence in the form of exhibits and Appellee's testimony, and after taking the matter under advisement, the Bankruptcy Court made findings of fact, which included the following:

Appellee was fifty-six years old at the time of trial. She is married and has an education through the ninth grade. Appellee has six children with her former husband, none of whom are currently dependents. Appellee incurred the student loan debt on behalf of her son, Justin Traina.

After their marriage in 2002, Appellee and her husband pooled their income to make payments on the student loan obligation. They continued to do so until Appellee filed the Chapter 7 petition. Although Appellee and her husband have no health insurance, Appellee received a quote for health insurance coverage in the amount $467.00 per month.[1] Appellee and her husband rent a home for $950.00 per month, and do not own any real property.

Appellee possesses an Ohio real estate license and is a buyer's agent[2] for ReMax Realtors[3] ("ReMax"). Appellee is on a 100% commission base with ReMax and is also responsible for paying expenses associated with her work. These expenses include leasing office space and paying for utilities, advertising, and a cable modem for Appellee's home computer. Appellee remits 30% of each commission that she receives to ReMax as payment on expenses

---

[1] The trial transcript reflects that the quote for health insurance may have been $2.00 higher, or $469.00 per month. (Tr. at 13.)

[2] Although the trial transcript reflects that Appellee acts primarily as a buyer's agent, it also reflects that she has had listings, thereby acting as a seller's agent, since joining ReMax Crossroads. (Tr. at 38.)

[3] The trial transcript reflects that Appellee's employer is ReMax Crossroads. (Tr. at 42.)

2

owed. On occasion, Appellee also takes a "draw" from ReMax. At the time of the Bankruptcy Court's decision, Appellee owed approximately $8,000.00 to ReMax. For approximately six years prior to joining ReMax, Appellee was a residential real estate agent for Smythe Cramer.

## II.

The Sixth Circuit uses the three-part test set forth in *Brunner v. New York State Higher Education Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987), to determine whether there exists an undue hardship warranting discharge of a student loan obligation. *See In re Oyler*, 397 F.3d 382, 385 (6th Cir. 2005) (explicitly adopting the *Brunner* test). As such, a debtor seeking discharge of student loan debt must satisfy the following three factors of the *Brunner* test by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*See Tirch v. Pennsylvania Higher Educ. Assistance Agency*, 409 F.3d 677, 680 (6th Cir. 2005).

In its decision, the Bankruptcy Court examined all three factors and determined that requiring Appellee to satisfy the student loan obligation would impose an undue hardship.

With respect to the first factor of the *Brunner* test, whether Appellee can maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans, the Bankruptcy Court looked to Schedule I - Current Income of Individual Debtor(s) and Schedule J - Current Expenditures of Individual Debtor(s), as well as Appellee's testimony at trial. (Op. at

3

7-8.) Upon review of the income and expenditures, the Bankruptcy Court determined that the combined monthly expenses of Appellee and her husband exceed their combined monthly income. (*Id.*) The Bankruptcy Court further found that a review of the monthly expenses for Appellee and her husband "does not reveal any extravagant expenditures and there does not appear to be room in their budget to minimize those expenditures in a way that would allow them to reach a monthly net surplus." (*Id.* at 8.) Based upon these findings, the Bankruptcy Court determined that Appellee cannot maintain a minimal standard of living if she were required to repay the student loan obligation. Accordingly, the Bankruptcy Court found that the first factor of the *Brunner* test had been satisfied.

As to the second factor of the *Brunner* test, concerning whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, the Bankruptcy Court looked to Appellee's testimony concerning future earnings. Specifically, the Bankruptcy Court stated:

> During the trial, plaintiff-debtor testified that this year she hopes to find buyers for 18 houses. Plaintiff-debtor then testified that, assuming she did find 18 buyers, she would receive commissions of approximately $54,000.00. From that $54,000.00, plaintiff-debtor indicated that she would have to pay 30% (or $16,200.00) to ReMax for her share of office expenses; $8,000.00 to ReMax for reimbursement on drawn funds and approximately $15,000.00 for other business related expenses, leaving a balance of $14,800.00. From that balance, plaintiff-debtor would have to pay self employment taxes.

(*Id.* at 9.) The Bankruptcy Court the assumed that, if Appellee's self-employment taxes were estimated to be $400.00 per month, she could still expect "only a yearly take home salary of $10,000.00." (*Id.*) Further, the Bankruptcy Court found nothing in the record to indicate that Appellee could: (1) find far in excess of 18 buyers per year; (2) substantially reduce her business

4

expenses; or (3) obtain other employment from which she could earn substantially more than she currently earns as a real estate agent. These observations, "coupled with Appellee's age, limited educational background, lack of retirement savings, medication requirements and current lack of health insurance" led the Bankruptcy Court to conclude that Appellee's financial adversity is more than just a temporary state of affairs. (*Id.*) Thus, the Bankruptcy Court concluded that Appellee had satisfied the second factor of the *Brunner* test.

As to the third factor of the *Brunner* test, whether the debtor has made good faith efforts to repay the loans, the Bankruptcy Court looked to the fact that, although Appellee's current husband is not obligated to repay the student loan debt, Appellee and her husband pooled their resources and made payments on the obligation until Appellee filed the Chapter 7 petition. The Bankruptcy Court found, "[b]ased upon this payment history[,] there is little doubt that plaintiff-debtor made a good faith effort to repay the challenged loans when there was excess income in the monthly budget with which to do so." (*Id.* at 9-10.) Accordingly, the Bankruptcy Court found that the third factor of the *Brunner* test had been satisfied.

### III.

On appeal, Appellant argues that the Bankruptcy Court erred in its decision to discharge the student loan obligation because Appellee did not demonstrate undue hardship. More specifically, Appellant argues that Appellee failed to establish any of three factors of the *Brunner* test by a preponderance of the evidence.

With respect to the first factor of the *Brunner* test, Appellant makes three arguments. First, Appellant contends that the Bankruptcy Court erred by looking solely at Appellee's income, rather than her income in combination with her husband's income, to determine if she

could maintain a "minimal" standard of living if forced to repay the loans. Second, Appellant argues that it was legal error for the Bankruptcy Court "to overlook Debtor's self-imposed financial state in determining that the obligation should be discharged." (ECF #9 at 22.) In support of this point, Appellant states that, because it was Appellee's decision to leave Smythe Cramer for a "less lucrative career of a 'buyer's agent' for ReMax Realtors," she cannot satisfy the first factor in *Brunner*. (*Id*.) Finally, Appellant asserts that the Bankruptcy Court erred in its household expense calculations. The alleged discrepancies in household expense calculations relate to an automobile payment of $421.00 per month, a tax obligation in the amount of $300.00 per month, $400.00 per month in self-employment taxes, and a quote for health insurance coverage in the amount of $467.00 per month. In addition, Appellant argues that the Bankruptcy Court erred in failing to find that the elimination of expenses for recreation, clubs, entertainment and charitable contributions "would allow Debtor to pay her monthly student loan payment comfortably without foregoing or sacrificing any household necessities." (*Id*. at 23.) Accordingly, Appellant contends that the proper accounting of expenses, in addition to the elimination of non-essential expenses, would allow Appellee to repay the student loan obligation and maintain a minimal standard of living.

Next, Appellant contends that Appellee failed to satisfy the second factor of the *Brunner* test because Appellee has no impediments affecting her potential for increased earnings, no impediments resulting from physical or mental disabilities, and no impediments to regaining health insurance. In sum, Appellant asserts that the Bankruptcy Court erred in focusing on a one-year snapshot of Appellee's financial condition, rather than focusing on her future earning capacity.

Appellant likewise argues that Appellee failed to establish good faith efforts to repay the debt, as required by the third factor of the *Brunner* test. Appellant asserts that Appellee's alleged failure to take advantage of the repayment options available to her "and her abrupt decision" to seek discharge of the debt precludes her from satisfying the third factor of the *Brunner* test. (*Id.* at 34.)

On August 12, 2005, Appellee filed a single-sentence response, stating that she stands by the decision of the Bankruptcy Court and the Bankruptcy Court Judge. (ECF #11.)

## IV.

In reviewing a bankruptcy court's decision, this Court reviews conclusions of law *de novo*. *See In re Hertzel*, No. 04-8083, slip op. at 3 (B.A.P. 6th Cir. Aug. 30, 2005). A decision that repayment of student loans constitutes an undue hardship is a question of law subject to *de novo* review. *See id.* The underlying factual determinations, however, must be affirmed unless they are clearly erroneous. *Id.* "A factual determination is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (*quoting In re Bailey*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000)).

As an initial matter, this Court is compelled to acknowledge that, despite a change in circumstances, Appellee never filed amended schedules in the underlying case. The Bankruptcy Court likewise acknowledged the debtor's failure to amend her schedules, stating:

> [P]laintiff-debtor never amended her Schedules notwithstanding the fact that her financial circumstances changed during the pendency of this case. Additionally, plaintiff-debtor testified that when she answered PHEAA's first set of interrogatories in December 2003, she attached her schedule I and J which, by that time, were no longer accurate given, *inter alia*, her change in employment to

7

ReMax and her husband's unemployment.

(Op. at 10.) Despite recognizing Appellee's affirmative obligation to accurately indicate her monthly income and expenses, her continuing duty to amend such information when her circumstances changed, and her obligation to completely and accurately reply to discovery requests, the Bankruptcy Court excused Appellee's conduct on the grounds that it was neither willful nor deliberate. (*Id.*) The Bankruptcy Court further stated that:

> Given plaintiff-debtor's failure to amend her Schedules I and J, it might appear upon review of only the docket in the main chapter 7 case that an undue hardship discharge is not warranted. However, based upon the testimony and other evidence adduced at trial, the Court finds that the Student Loan Obligation should be discharged.

(*Id.* at 11.)

There is no question that Appellee had a duty to amend her bankruptcy schedules and to completely and accurately reply to discovery requests in order to fully set forth her financial condition. The importance of accurate schedules was addressed recently in *In re McKain*, 325 B.R. 842, 848-51 (Bankr. D. Neb. 2005). In that case, the court emphasized that both the debtor and the debtor's attorney are responsible for the veracity of the information contained in the bankruptcy schedules. *Id.* at 849. The purpose of the schedules is to provide detailed information about the debtor's financial condition, without having to expend the time and expense of conducting a detailed examination to obtain that information. *Id.* at 850.

In the instant case, the Bankruptcy Court questioned Appellee at length during the trial in order to ferret out the information necessary to determine whether discharge was warranted. Indeed, a great deal of Appellee's testimony consisted of information that differed from the filed schedules. Both Appellee and Appellee's counsel had the responsibility to update the schedules,

8

but failed to do so.

As reflected in the Bankruptcy Court's decision, the failure to update the schedules results in a record less clear than that which would have existed had the schedules been updated. Having recognized this, however, the Court agrees that there is nothing in the record to suggest that Appellee's actions were willful or deliberate. Absent such evidence, Appellee's failure to amend shall not serve as a basis for denial of the requested discharge. *Cf. id.* at 851 (finding that, because debtor's failure to disclose all assets and liabilities on her schedules was not in bad faith or the result of reckless indifference for the truth, disallowance of amended exemptions was not warranted).

This Court has reviewed the Bankruptcy Court's decision *de novo* and has considered the testimony and other evidence adduced at trial, as well as all of the pleadings and filings of the parties. Based upon this review, the Court finds that Appellant's arguments lack merit, and that the decision discharging the student loan obligation should be affirmed.

A.

With respect to the first factor of the *Brunner* test, Appellant's contention that the Bankruptcy Court looked solely at Appellee's income, rather than her income in combination with her husband's income, is contrary to the record. The Bankruptcy Court's decision explicitly states that it considered the combined monthly income for Appellee and her husband in finding that the first factor of *Brunner* had been satisfied. (Op. at 7-8.) Evidence regarding both Appellee's income and her husband's income was before the Bankruptcy Court at trial, and the Bankruptcy Court's decision specifically addressed changes in their combined income and expenses that were not reflected in Schedules I and J. (*Id.*) Accordingly, Appellant's request

9

that this Court reverse the Bankruptcy Court's decision on this ground is denied.

Similarly, Appellant argues that the decision should be reversed because the Bankruptcy Court failed to consider that Appellee's financial state is self-imposed. This Court has reviewed the cases cited by Appellant in support of this position, and finds all of them to be distinguishable from the instant case.

In *In re Oyler*, 397 F.3d 382, 384 (6th Cir. 2005), for example, the debtor had earned both bachelor's and master's degrees and had worked as a salesman, an audio engineer and once owned his own business. Against the backdrop of that education and experience, the court found that the debtor could not claim undue hardship because his choice to work as a pastor of a small start-up church, earning less than $10,000 a year for two years, demonstrated that he did not maximize his earnings. *Id.* at 386.

Unlike the debtor in *Oyler* and the other cases cited by Appellant, Appellee is not voluntarily underemployed, nor is she providing financial assistance to non-dependent family members.[4] To the contrary, Appellee, who was fifty-six years old at the time of trial and possesses only a ninth grade education, has maximized her earnings by working for seven years

---

[4] *See, e.g., In re Lehman*, 226 B.R. 805, 808 (Bankr. D. Vt. 1998) (finding that debtor, who possessed Bachelor's and Master's degrees and who was attempting to earn a living by selling approximately $4,000.00 in pottery in year immediately preceding bankruptcy, and $7,000.00 in pottery in the subsequent year, was not entitled to discharge on the ground of undue hardship); *In re Grigas*, 252 B.R. 866, 875 (Bankr. D.N.H. 2000) (holding that debtor, who possessed a Bachelor's degree, a Master's degree and a teachers' certification, was voluntarily under-employing herself by failing to seek a position in the administrative or secretarial fields, in which she had roughly twenty years of experience); *In re Stebbins-Hopf*, 176 B.R. 784, 788 (Bankr. W.D. Tex. 1994) (finding that debtor was responsible for her financial hardship because she chose to help her family financially, despite the fact that the family members were not dependents); *In re Farrish*, 272 B.R. 456, 462 (Bankr. S.D. Miss. 2001) (ruling that debtor, who had an undergraduate degree in biology and a doctorate degree in podiatric medicine, did not maximize his income based on his decision to remain in an area of limited opportunity in his chosen field of work); *In re Rappleye*, 210 B.R. 336, 341 (Bankr. W.D. Mo. 1997) (finding that debtor, who had years of business experience and at least two lucrative businesses, failed to maximize his income by taking voluntary retirement and working in a voluntary position).

as a real estate agent. The record suggests that Appellee has a strong work ethic, in that she advertises properties, farms a particular geographic area, sends mailers to potential first-time buyers, and obtains leads from the Internet. Further, based on her limited education, she is ineligible for any promotion, whether employed by Smythe Cramer or ReMax. (Tr. at 42-43.) Having this information before it, the Bankruptcy Court recognized that there was no evidence "to indicate that plaintiff-debtor could obtain other employment from which she could earn substantially more than she earns as a real estate agent." (Op. at 9.) Based upon the record, this Court agrees and is unconvinced by Appellant's argument that Appellee's financial position is self-imposed.

Furthermore, the discrepancies in household expense calculations as alleged by Appellant are not grounds for reversal. Consistent with the testimony at trial, the Bankruptcy Court acknowledged that: (1) Appellee no longer had the $421.00 monthly automobile payment because she had redeemed her vehicle; (2) the $700.00 per month listed as self-employment taxes on Schedule J included the $300.00 monthly payment to the IRS for unpaid income taxes and, as such, the self-employment taxes were instead $400.00 per month; and (3) Appellee had received a quote for health insurance in the amount of $467.00 per month, but that cost could be higher based upon Appellee's health problems.[5] (*Id.* at 4, 7, 9.) Accordingly, the Court considered the evidence before it as to these figures, and used that evidence to determine that Appellee could not maintain a minimal standard of living if forced to repay the loans.

Finally, Appellant's contention that Appellee could make a payment of $170.00 per month on her loans if she eliminated, among other costs, $40.00 per month for charitable

---

[5] Appellee testified that she has high blood pressure, high cholesterol and osteopenia. (Tr. at 18.)

contributions is controverted by Appellee's testimony that the $40.00 per month is a mandatory obligation imposed by her employer. (Tr. at 48.) Based upon the foregoing, the Bankruptcy Court's finding that Appellee satisfied the first factor of the *Brunner* test is not clearly erroneous.

### B.

As to the second factor of the *Brunner* test, this Court finds that additional circumstances exist showing that Appellee's inability to pay is likely to persist for a significant portion of the repayment period. The Sixth Circuit, like the Ninth Circuit, has not articulated an exhaustive list of what additional circumstances must be present in order to justify an undue hardship finding. *See In re Nys*, 308 B.R. 436, 444-45 (9th Cir. 2004) (citing *In re Cheeseman*, 25 F.3d 356, 360 (6th Cir. 1994)). The additional circumstances required by the second factor in *Brunner* may consist of any circumstances, beyond the mere inability to pay, that demonstrate the inability to pay is likely to persist for a significant portion of the repayment period. *See id.*; *see also Hertzel*, No. 04-8083, slip op. at 10 (recognizing that additional circumstances might include illness, disability, a lack of useable job skills or the existence of a large number of dependents). This determination is made on a case-by-case basis, and may include consideration of, *inter alia*, the debtor's age, training, education, and assets. *See Nys*, 308 B.R. at 444-45.

As discussed previously, the record reflects that Appellee possesses education only through the ninth grade. She was fifty-six years old at the time of the Bankruptcy Court's decision and thus has a limited work life. Appellant does not own any assets of value, and neither she nor her husband have any retirement savings. Appellee has maximized her income, working as a real estate agent for seven years. Each of these circumstances indicates that Appellee's state of affairs is likely to persist for a significant portion of the repayment period.

12

*See id.*; *see also In re Siebert*, 10 B.R. 704, 705 (finding continuing inability to pay was likely to persist where debtor had only an eighth grade education).

In finding that the second *Brunner* factor had been satisfied, the Bankruptcy Court looked to these circumstances, and found a limitation on employment based on a lack of evidence suggesting that Appellee could find far in excess of 18 buyers per year, substantially reduce her business expenses, or obtain other employment from which she could earn substantially more than she earns as a real estate agent.[6] (Op. at 8-9.)

This Court finds Appellant's suggestion that Appellee's business expenses were perhaps a one-time, accumulated cost, and its assertion that the Bankruptcy Court made inappropriate assumptions regarding Appellee's economic forecast to be without merit. The record reflects that Appellee's business expenses are ongoing in nature, including costs through ReMax, as well as personal business costs. (Tr. at 71-73, 75-76.) The record further reflects that the Bankruptcy Court's assumptions were based on Appellee's past experience as a real estate agent. (Tr. at 36-41, 70-80.)

Equally unconvincing is Appellant's argument that Appellee cannot satisfy the second factor in *Brunner* because she has no impediments from physical or mental disability and no impediments to regaining health insurance. There is no requirement that these particular circumstances exist in order to justify an undue hardship finding. For the reasons set forth above, the Court finds that Appellee's state of affairs is likely to persist for a significant portion of the repayment period. As such, the Bankruptcy Court's finding that Appellee satisfied the second

---

[6] The Bankruptcy Court also noted that Appellee has medication requirements and lacks health insurance. (Op. at 9.)

factor of the *Brunner* test is not clearly erroneous.

### C.

Last, this Court examines Appellant's claim that the Bankruptcy Court erred in concluding that the third factor of the *Brunner* test had been satisfied. Although Appellant and Appellee are in disagreement concerning whether Appellee availed herself of repayment options, the record is clear that Appellee and her husband pooled their resources and made payments against the student loan obligation until Appellee filed the Chapter 7 petition. This fact, coupled with evidence that Appellee used her best efforts to obtain employment, maximize her income, and minimize her expenses, establish that the Bankruptcy Court's finding that Appellee satisfied the third factor of the *Brunner* test is not clearly erroneous.

### V.

For the foregoing reasons, the decision of the Bankruptcy Court discharging Appellee's student loan debt pursuant to 11 U.S.C. § 523(a)(8) is AFFIRMED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: September 8, 2005